UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN and JILL ROE, | ) | CASE NO. 4:05CV1528 |
| As Parents and Custodian of Johnny Roe, II | ) | |
| a Minor, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MAHONING COUNTY, OHIO, et al., | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) | |

The above captioned case is before the undersigned on the motions of Defendants Eva Burris ("Burris"), Rollen Smith ("Smith"), and Mahoning County, Ohio (collectively "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56(c). ECF Dkt. #s 35, 37. Plaintiffs John and Jill Roe, the parents and custodians of minor Johnny Roe II (collectively "Plaintiffs"), have filed motions in opposition. ECF Dkt. #s 56, 57.

For the following reasons, the Court GRANTS the motion for summary judgement in favor of Defendants' Burris and Smith and also DISMISSES Mahoning County for reasons other than stated in its motion for summary judgment. The Court DENIES Mahoning County's motion for summary judgment as MOOT for the reasons stated hereafter. ECF Dkt. #s 35, 37.

**A.     FACTS AND PROCEDURAL HISTORY**

On June 1, 2004, Plaintiff Johnny Roe ("Roe II") was incarcerated at the Mahoning County Juvenile Justice Center ("JJC") for aggravated robbery.[1] ECF Dkt. #41 ("Roe II Deposition") at 10. At that time, Roe II had been incarcerated at the JJC for a couple of months. *Id.* And prior to this incarceration, Roe II had been at the JJC at least six times, beginning when he was nine years old, for offenses ranging from arson to assault with a deadly weapon. *Id.* at 13-18; 18-35.

Prior to the incident that forms the subject of this Complaint, Johnny Roe, II was housed in a cell with another inmate for a couple of weeks. *Id.* at 73. At the time, Defendant Jimmy Coe ("Coe") was housed in an isolation cell on the same floor in Lynch Hall. *Id.* at 80-81. Coe was in isolation due to an alleged sexual assault on another juvenile at the JJC, Johnny Roe, but Roe II did not know that and thought Coe was in isolation because of a fight with another juvenile at the JJC.[2] *Roe II Deposition* at 81. Roe II knew of and recognized Coe from parole meetings, but did not speak to Coe at the JJC. *Id.* at 49-50. Roe II stated that he was not afraid of Coe at that time. *Id.* at 50.

Because the isolation cell did not have restroom facilities, Coe was taken to another cell with a restroom when necessary, and used the restroom in Roe II's cell one time prior to this incident. *Id.* at 81-82. At that time Coe initiated an argument with Roe II and Roe II's cell mate

---

[1]     Defendant Mahoning County argues that it is not responsible for implementing the policies or procedures of the JJC and it does not control the daily activities of the JJC. ECF Dkt. #35. There is no dispute that the JJC is located in Mahoning County.

[2]     *See Roe v. Mahoning County, et al.*, 4:05CV635 (N.D. Ohio 2005).

was present. *Id.* at 82-85. Coe was present in their cell for about half an hour. *Roe II Deposition* at 84. According to Roe II, Coe was merely "talking a bunch of, bunch of crap." *Id.* at 82-83. But as he described it, Roe II did not think that Coe was "going to do anything." *Id.* at 83. Moreover, Coe did not threaten or try to sexually or physically assault Roe II in any way during this initial encounter. *Id.* Roe II did not report anything about this incident. *Id.* at 85. Roe II explained that he did not tell the guard not to bring Coe into the cell again out of fear of retaliation. *Roe II Deposition* at 91.

The second time Coe entered Roe II's cell to use the toilet was after lock down, but before lights out. *Id.* at 87. Coe entered the cell and went to Roe II's bed where he sat down next to him and rubbed his arm. Coe called him "sexy", and Roe II responded, "get out of here." *Id.* at 88. Then Coe punched Roe II in the ribs. *Id.* at 89. Roe II's cell mate told Coe to leave him alone but Coe responded with a verbal threat. *Id.* at 89. Coe then tried to pull down Roe II's pants. *Roe II Deposition* at 92. Roe II yelled for the guard, but got no response. *Id.* at 92. Coe grabbed Roe II's mouth and told Roe II to be quiet. *Id.* at 93. He then stopped and went over to the toilet. *Id.* at 93. Coe sat down on the toilet with his pants down, threw Roe II's socks beside the toilet, but made it seem like he had thrown them into the toilet and told Roe II to come and get them. *Id.* at 94. Coe did throw a roll of toilet paper into the toilet. *Roe II Deposition* at 94-5. Coe did not actually use the bathroom during this incident. *Id.* at 95. The exchange was fairly loud and lasted about ten minutes. *Id.* at 94.

Then Coe got up and was shaking his penis around. *Id.* at 95. Roe II laid on the cot with the blanket over his head. *Id.* at 96. Coe pulled up his pants and tried to pull the blanket off of Roe II. *Roe II Deposition* at 96. Then Coe tried to squeeze and pinch Roe II's nipples and the

3

two started wrestling. *Id.* at 98. Coe hit Roe II a couple of times in the ribs, leg and buttocks. *Id.* at 98. Coe stopped when he heard the guard coming and told him he was still using the bathroom. *Id.* at 98. Roe II yelled to get Coe out of his room because Coe was messing with him and hitting him. *Id.* at 98-9. Coe ran back and sat on the toilet, responded that he was not messing with Roe II and that he was not finished with the bathroom. *Roe II Deposition* at 99. The guard then said to keep it down and walked away. *Id.* at 99. Roe II did not say anything about being sexually harassed because he thought Coe might just be messing around. *Id.* at 100.

After the guard left, Coe again went over and sat down next to Roe II poked at him and tried to squeeze his buttocks. *Id.* at 101. Roe II tried to roll over and away from Coe, but Coe grabbed at his genital region and so Roe II rolled back onto his back. *Id.* at 102. Roe II then jumped off the cot and ran to the door and started kicking it. *Roe II Deposition* at 102. Coe followed him and continued to poke him in the ribs and grab for his buttocks. *Id.* at 102. The guard then came down and removed Coe from the room. *Id.* at 103. The entire episode lasted about 45 minutes. *Id.* at 101. When the Guard came down, Roe II advised him that Coe had made sexual advances towards him. *Id.* at 103.

After Coe was removed, Roe II tried to go to sleep but was then visited by JJC supervisor Dawn DiBernardi. *Roe II Deposition* at 104. Ms. DiBernardi spoke with Roe II's roommate and took Roe II down to her office to obtain a statement and begin an investigation of the incident. *Id.* at 104-105.

During Roe II's previous stays at the JJC he had been housed in isolation and when he had to use the bathroom the guards took him to someone else's room and made the occupants leave. *Id.* at 81.

On June 1, 2005, Plaintiffs filed the instant action against Defendants Eva Burris and Rollen Smith (collectively "JJC Defendants"), individually and in their official capacities, and Mahoning County, Ohio ("Mahoning County"), alleging violations of 42 U.S.C. § 1983, negligence, loss of consortium and parental responsibility.[3]  ECF Dkt. #1.  On June 24, 2005, Defendants Burgess and Smith filed an answer.  ECF Dkt. #5.  On June 27, 2005, Defendant Mahoning County filed an answer.  ECF Dkt. #6.  On September 1, 2005, the parties consented to the jurisdiction of the undersigned and filed a joint motion to consolidate this case with the related case, number 4:05CV635.[4]  ECF Dkt. #15-17.  On September 6, 2005, the undersigned granted the motion and consolidated the cases.  ECF Dkt. #18.  On May 5, 2006, Defendants Mahoning County and JJC Defendants filed separate motions for summary judgment.  ECF Dkt. #35, 37.  On August 21, 2006, Plaintiffs filed motions in opposition.  ECF Dkt. # 56-57.  On August 25, 2006, Defendant Mahoning County filed a reply.  ECF Dkt. #60.  On August 28, 2006, JJC Defendants filed a reply.  ECF Dkt. #61.

**B.    STANDARD OF REVIEW**

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[3]  The Complaint also names John Does 1 through 10.  No service, however, has been perfected against these Defendants, nor have they been identified. Accordingly, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, John Does 1 through 10 are **DISMISSED** as Defendants.

[4]  Both cases name the same person as perpetrator and have substantially the same Defendants.  *See Roe v. Mahoning County, et al.*, 4:05CV635 (N.D. Ohio 2005). Both cases also have similar procedural histories.  *Id.*

5

> there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he bears the ultimate burden of proof at trial. *See id.; Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *See id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of his position. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *See id.* at 249. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *See Celotex Corp*., 477 U.S. at

322.

**C.     ANALYSIS**

JJC Defendants argue that they did not violate Plaintiffs' civil rights and specifically that they had no knowledge of a substantial risk of serious harm to Roe II. ECF Dkt. #37. Further, JJC Defendants argue that in so far as they are sued in their individual capacities, they are shielded by the doctrine of qualified immunity. *Id.* Mahoning County argues that it is not responsible for the daily operations at the JJC. ECF Dkt. #35.

42 U.S.C. § 1983 provides a cause of action against any person, who, under color of state law, deprives an individual of any "rights, privileges, or immunities secured by the Constitution and laws."[5] 42 U.S.C. § 1983. In order to prevail in a Section 1983 action against a government official, a plaintiff must overcome qualified immunity by establishing that the official violated a "clearly established" constitutional right and "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Consequently, a plaintiff opposing qualified immunity must answer this threshold question: whether the facts, taken in the light most favorable to the plaintiff, demonstrate that an official's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 198 (2001); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579 (6th Cir. 2003). If no constitutional right would have been violated were the allegations established, the Court must terminate the qualified immunity inquiry and dismiss the suit. *See Saucier*, 533 U.S. at 198. On the other hand, if the plaintiff answers the

---

[5]     Defendants do not challenge the "color of law" element. ECF Dkt. #42 at 10. Instead, they argue that Defendants did not violate Roe II's civil rights. *Id.*

question in the affirmative, "the next, sequential step is to determine whether the right was clearly established." *Id.* With regard to this second step, the plaintiff must rely on either Supreme Court precedent, precedent from this Court, or cases from other courts which "point unmistakably to the unconstitutionality of the conduct and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Mumford v. Zieba*, 4 F.3d 429, 432-33 (6th Cir.1993). If the plaintiff fails to establish either the existence of a constitutional violation or that such a violation was clearly established, the Court must dismiss the action.

Accordingly, the Court shall first determine whether Plaintiffs have presented sufficient facts to demonstrate that the individual defendants' conduct violated Roe II's constitutional rights. Plaintiffs argue that each Defendant "knew Johnny Roe [II] faced a substantial risk of serious harm from predatory inmates[,]" that was obvious and Defendants failed to protect and separate him from other juveniles. ECF Dkt. #1 at ¶ 21. Specifically, Plaintiffs assert that Defendants Smith, Burress and Mahoning County were "responsible for the policies and practices, including classification and cell assignment, that led to the assault" of Roe II. ECF Dkt. #1 at ¶22.

The Eighth Amendment imposes a duty upon prison officials to protect prisoners in custody from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To prevail on a claim of failure to protect under the Eighth Amendment, an inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials subjectively knew of and disregarded that safety risk. *Id.* at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact

8

subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. Further, a prison official may not escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. *Lopez v. LeMaster*, 172 F.3d 756, 762 n. 5 (9thCir. 1999) (quoting *Farmer*).

Based upon the facts presented, Plaintiffs have not shown that Roe II was "incarcerated under conditions posing a substantial risk of serious harm," or that the Defendants subjectively knew of and disregarded that safety risk. *See Farmer, supra*. JJC Defendants have provided deposition testimony from Plaintiffs as well as affidavits indicating that none of the individual Defendants knew of or disregarded a substantial risk of serious harm to Roe II nor did they improperly house him. Knowledge of the asserted safety risk or circumstances clearly indicating the existence of such risk is essential to a finding of deliberate indifference. *See Farmer*, 511 U.S. at 834, 837.

Defendant Smith, the Director of Detention at the JJC at the time of the incident, explained that there were procedures in place to allow a juvenile in isolation to use the toilet where, if the cells were occupied, two other juveniles would be present. ECF Dkt. #42, Attachment #2 ("Smith Affidavit") at ¶ 16. Also, the guard was to check on the juvenile using the toilet every 15 minutes. *Id.* at ¶ 20. Coe was already housed in an isolation unit away from the general population at the time of the instant events because of his previous incident with his cell mate Johnny Roe. *Id*. at ¶ 16. Further, Defendant Smith averred that at the time of the

incident, neither he nor any of the JJC staff had any knowledge or information that caused them to believe that permitting Coe to use the facilities in Roe II's cell caused a substantial risk of harm to Roe II.  *Id.* at ¶ 19.  Defendant Burris, the Court Administrator for the JJC, has stated the same.  ECF Dkt. #42, Attachment #3 ("Burris Affidavit").  Moreover, Roe II, while harassed by Coe during his previous bathroom trip, chose not to relay any information to anyone in authority at the JJC because he did not think it was that big of a deal and did not want to cause trouble for himself.  *See Roe II Deposition* at 83, 91, 100.  This indicates that if anything, Roe II feared retaliation for "tattling" more than any kind of physical harm from being in the same cell as Coe for a short time.

In this case, even though the JJC Defendants knew of Coe's previous sexual assault on his former cell mate and Plaintiffs allege that Roe II asked that Coe be removed from his room when the guard checked the first time, this does not amount to deliberate indifference.  Liability under Section 1983 cannot be imposed merely because of the supervisory position which a supervisor holds.  *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984).  At a minimum, in order to find a supervisor liable under §1983, a plaintiff must allege that he or she "condoned, encouraged, or knowingly acquiesced in the alleged misconduct."  *Id.;*  423 U.S. 362 (1976) at 373-377.  Section 1983 liability must be based upon more than just the right of a supervisor to control his or her employees.  *Bellamy*, 729 F.2d at 421; *See Mills v. City of Barbourville,* 389 F.3d 568, 580 (6th Cir. 2004) (explaining that plaintiff must prove that "the defendant, as a supervisory official, was personally responsible for the alleged unconstitutional actions that caused his injury.").  In addition, when suing a defendant in his or her individual capacity, the plaintiff must allege the personal involvement of the defendants in causing his injury.  *Carrion v.*

10

*Wilkinson*, 309 F.Supp.2d 1007, 1013-14 (N.D.Ohio, 2004) (citing *Hardin v. Straub,* 954 F.2d 1193, 1196 (6th Cir.1992)). Plaintiffs fail to meet these burdens. Defendants Smith and Burris have averred that they did not know that allowing Coe to use the toilet in Roe II's cell would pose a substantial risk of harm to Roe II. Plaintiffs have not rebutted these assertions nor are there facts in the record to support a finding that either Defendant Smith or Burris condoned, encourage or knowingly acquiesced in the misconduct.

The guard, even if dilatory in checking on Coe, does not rise to the level of deliberate indifference. Simple negligence is not actionable under Section 1983. *See Long v. McGinnis*, 97 F.3d 1452 (6th Cir. 1996); *Marsh v. Arn*, 937 F.2d 1060-61 (6th Cir. 1991). Plaintiffs have produced no facts that indicate Smith or Burris had any knowledge that Coe was a threat to Roe II. Roe II never told anyone about Coe's statements during the previous bathroom incident. *Roe II Deposition* at 85, 99. And Roe II himself stated that he was not concerned about Coe nor did he perceive himself to be in any danger from Coe at that time. *Roe II Deposition* at 83, 85.

The policy for bathroom use by juveniles in lock down is done to either have them use a toilet in an empty room or if that is not possible (for whatever reason) then the policy to have them use a toilet in a room occupied by two juveniles. *Smith Affidavit* at ¶ 16. Presumably this is to prevent one on one contact with a juvenile in lock down and a juvenile in the ordinary population. Even if the undersigned were to impute knowledge that Coe would assault another juvenile to Defendants, it is too far a stretch to impute knowledge that Coe would assault another juvenile in the presence of a third party and do this while feigning use of the toilet. Further, as soon as Roe II kicked the cell door, the guard came and removed Coe from the cell. *Smith Affidavit* at ¶ 21. The incident that happened with Roe II is regrettable to say the least, but the

actions of Defendants in connection with the incident are not actionable under 1983.

Plaintiffs, for their part assert that JJC Defendants failed to take reasonable precautions in allowing unsupervised inmates with a history of sexual assault on other JJC detainees unfettered access to detainees. ECF Dkt. #59 at 6. The nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *Stein v. Kent State Univ. Bd. of Trustees*, 994 F. Supp. 898, 906 (D. Ohio 1998); *Sherman v. American Cyanamid Co.*, 996 F. Supp. 719, 722 (D. Ohio 1998). Furthermore, it is the plaintiff who must ultimately shoulder the burden of proof to establish that a defendant is not entitled to qualified immunity. *See Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991). However, Plaintiffs have failed to point the Court to any evidence whatsoever that Defendants improperly gave Coe unfettered access to Roe II or that they knew of the potential danger to Roe II by allowing Coe to use the toilet in his cell, or that Roe II knew of any danger or tried to communicate his fear of Coe to any of the JJC Defendants, or that Defendants failed to take reasonable precautions to prevent the attack or that they acted improperly upon learning of the attack.

Based on the foregoing, there is no dispute as to any material fact and no evidence that would allow a jury to find that JJC Defendants knew of or disregarded a substantial risk of serious harm to Roe II. Accordingly, qualified immunity attaches and all claims against JJC Defendants in their individual capacities are dismissed. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (explaining that if no constitutional right had been violated even if all of Plaintiff's allegations are true, then qualified immunity applies). Further, as Plaintiffs have failed to meet their reciprocal burden on summary judgment and there are no facts to support their theory of

12

liability, JJC Defendants, in their official capacity are also dismissed.  Finally, since there is no constitutional violation here, there is no municipal liability.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining that for municipal liability to exist, a constitutional violation must take place); *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002). Accordingly, Defendant Mahoning County is entitled to summary judgment with respect to Plaintiffs' municipal liability claim.[6]

The remaining claims contained in the Complaint assert violations of Ohio law against all Defendants, including Defendant Jane Coe as parent of Jimmy Coe.  As the Court has dismissed all federal claims alleged against Burris, Smith and Mahoning County, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims asserted in the Complaint.  *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Taylor v. First of America Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).  Accordingly, Plaintiffs' remaining state law claims are **DISMISSED** without prejudice.

### D.    CONCLUSION

Based upon the foregoing, the undersigned GRANTS the motion of Defendants Eva Burris, and Rollen Smith for summary judgment and DISMISSES the claims against them as well as the claims against Defendant Mahoning County with prejudice.  Further, the undersigned declines to exercise jurisdiction over the remaining state law claims and thus, dismisses the claims of negligence, loss of consortium and parental liability against all Defendants, including

---

[6] The Court recognizes that Defendant Mahoning County has filed its own brief for summary judgment; However, for the reasons state above, that motion is now MOOT.  ECF Dkt. #35.

Jane Coe, without prejudice. Also, based on the foregoing, the motion for summary judgment filed by Defendant Mahoning County is DENIED as MOOT. ECF Dkt. #s 35, 37.

IT IS SO ORDERED.

SIGNED and ENTERED on this 26th day of September, 2006.

                                                   */s/George J. Limbert*
                                                   GEORGE J. LIMBERT
                                                   United States Magistrate Judge